IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PATRICIA MURCHISON<br><br>　　Plaintiff<br><br>VS.<br><br>ELI LILLY & COMPANY<br><br>　　Defendant. | §<br>§<br>§<br>§<br>§ CIVIL ACTION NO. H-88-927<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND RECOMMENDATION

Before the Court is Defendant Eli Lilly & Company's Motion for Judgment on the Pleadings pursuant to Rule 12(h)(2) of the Federal Rules of Civil Procedure. After considering the pleadings on file and relevant law, the Court recommends that Defendant's motion be DENIED.

### I.  STATEMENT OF FACTS

Patricia Murchison, a Texas resident, filed this suit on her own behalf and as next friend for her son, Nicolas, against Eli Lilly & Company, an Indiana corporation, under diversity jurisdiction, 28 U.S.C. § 1332. Mrs. Murchison alleges that she and her son suffered injuries as a result of her mother's use, while she was carrying Patricia *in utero* in 1953-54, of the synthetic estrogen drug diethylstilbestrol (DES) manufactured and marketed by Lilly.

DES was originally developed and marketed to treat various non-pregnancy related problems of the female reproductive tract.

In the late 1940s it began to be prescribed for the purpose of preventing miscarriages and premature births in problem pregnancies. Although there were indications as early as the 1930s that drugs of this type might cause cancer and offspring abnormalities in animals, it wasn't until the 1970s that scientific data gathered from human use indicated that DES might cause changes in the reproductive organs of the female fetuses that the drug was intended to save. These changes may lead to premature births and other reproductive problems when the originally exposed female fetuses bear children of their own.

Patricia Murchison was told by Dr. Warren Jacobs in 1984 that her reproductive system manifested changes including a T-shaped uterus, cervical abnormalities such as cockscomb, and adenosis, changes which can be caused by exposure to DES. Another doctor, Mark Jacobs, confirmed that diagnosis when Mrs. Murchison became pregnant with Nicholas sometime later during the first half of that same year. Afterward her cervix manifested incompetence, and Nicolas was born prematurely in December.

Patricia alleges that Nicolas suffers from unspecified injuries which are a direct result of his premature birth, which was a direct result of the damage suffered by her reproductive system due to her mother's ingestion of the drug DES during the first trimester of her pregnancy with Patricia in December of 1953 and January of 1954. She bases her claims against Eli Lilly on theories of negligence, strict liability, breach of warranty, and fraud and/or misrepresentation in that Lilly knew or should have

2

known of the drug's danger and should have warned about it in 1953 and 1954 when it was administered to Patricia's mother.

Lilly's various affirmative defenses to the Murchisons' claims include intervening cause, accident of nature, misuse of drug, unusual sensitivity to drug, and impossibility of warning in 1954 of dangers that were unknown in the 1950s. Particularly, Lilly claims that it was unforeseeable in 1954 that a third generation child like Nicholas, who never came in direct contact with DES, might be harmed by it.

## II. JUDGMENT ON THE PLEADINGS

Eli Lilly & Company requests judgment on the pleadings in that Plaintiffs have failed to state a claim on which relief can be granted. Lilly believes that the birth of Nicholas Murchison more than thirty years after his grandmother's ingestion of, and his mother's exposure to, DES is too far removed from Lilly's alleged wrongful act to hold Lilly to any duty to Nicholas. Lilly claims Patricia Murchison cannot prove that her exposure to DES in 1953-54 was the proximate cause of Nicholas's injuries.

### A. Texas Law

Because subject matter jurisdiction in this case is founded on diversity, this case is controlled by Texas substantive law. Texas, like most other jurisdictions, has recognized a child's cause of action for prenatal injury, but, unlike many of these same jurisdictions, only if the child is born alive. *Yandell v. Delgado*, 471 S.W.2d 569 (Tex. 1971). The legislature, in conformity, has disallowed recovery under the Texas Wrongful Death

Statute to a fetus who is not born alive. *Witty v. Am. Gen. Capital Distrib., Inc.*, 727 S.W.2d 503 (Tex. 1987).

Neither the Texas legislature nor the Texas courts, however, have previously addressed the matter of preconception torts or, more specifically, injuries involving DES which uniquely manifest themselves in the third generation. Because the initial injury is to female reproductive organs of the second generation child of the DES user, the third generation children of DES affected mothers may suffer the consequences of premature birth caused by their mothers' abnormal reproductive organs attributable to DES.

Plaintiff and Defendant discuss the role of foreseeability as applied in typical Texas negligence and strict liability cases, attempting to define or preclude issues. Whatever the parties may say to the contrary, an examination of the case law they cite makes it clear that foreseeability is an element in strict liability cases as well as in negligence cases. *See Reese v. Mercury Marine Division of Brunswick Corp.*, 793 F.2d 1416, 1420 (5th Cir. 1986), *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex. 1980). Without deciding its ultimate role, especially where there are issues of fact closely related to it, foreseeability is not an appropriate base for summary disposition, but rather, a matter of fact which a jury must decide. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."); *Bergstreser v. Mitchell*, 577 F.2d 22 (8th Cir. 1978) and *Jorgenson v. Mead Johnson Laboratories, Inc.*, 483 F.2d 237 (10th Cir. 1973), suggesting that motions to dismiss are inappropriate in cases involving pre-conception torts.

The very least that can be said with assurance in Texas is that existing prenatal tort law indicates the courts' intent to allow an injured fetus, once he is born and lives, a remedy against his wrongdoer for his injury. There is nothing in this law that indicates a different result would ensue in a case where the manifested injury impacts the third generation because of the injury's nature.

### B. Other Jurisdictions

Jurisdictions that have considered the question of preconception torts have arrived at differing conclusions under differing sets of facts. Two cases involved injury to a mother's uterus (perforation during abortion; negligently performed Caesarean) which resulted in injury to a child conceived years afterward. New York, in *Albala v. City of New York*, 429 N.E.2d 786 (N.Y. 1981), disallowed a child's cause of action against negligent doctors, reasoning that a contrary decision would stretch "traditional tort concepts beyond manageable bounds." The Eighth Circuit Court of Appeals disagreed in a similar case, allowing such an action in *Bergstreser v. Mitchell*, 577 F.2d 22 (8th Cir. 1978), on the theory that to hold otherwise would provide the Plaintiff with no remedy against his wrongdoer.

5

New York again limited liability in a case where a mother's exposure to the chemical ethylene oxide before the conception of her child resulted in alleged chromosomal damage, offering fear of fraudulent claims and generations of Plaintiffs as its rationale. Like the New York court in *Albala*, fear of mushrooming tort claims extending far into the future because of alleged negligence far in the past shaped policy restrictions on liability suits. Yet in a very recent case dealing specifically with DES, New York reversed itself and allowed a cause of action for a third generation child born with injuries. *Enright v. Eli Lilly & Co.*, 155 A.D.2d 64, 553 N.Y.S.2d 494 (Mar. 22, 1990). Here the court reasoned that recognition of the cause of action still left Plaintiff with the burden of proving proximate cause, and this alone would provide adequate boundaries to the legal responsibilities of a DES manufacturer. Critics of *Enright*, noting that the New York legislature has passed a revival statute in regard to DES claims, have distinguished the case as unique in that it responds to apparent legislative intent. Perhaps that is exactly the point. The New York legislature recognizes that DES is different by the very nature and timing of the injuries it causes, and must necessarily be addressed in a manner different than other preconception torts if the injured parties in these cases are to have an adequate remedy.

Three other jurisdictions have allowed non-DES preconception injuries cases to proceed. In *Jorgensen v. Meade Johnson Laboratories, Inc.*, 483 F.2d 237 (10th Cir. 1971), the Tenth

6

Circuit Court of Appeals recognized a preconception cause of action where a mother's taking birth control pills allegedly caused the birth of a mongoloid child. Illinois, in *Renslow v. Mennonite Hospital*, 76 Ill.2d 348, 367 N.E.2d 1250 (1977), allowed a child to proceed against a hospital and a physician for giving the child's mother an improper RH blood transfusion years before her conception. The court here distinguished this case from other possible cases in which there might be perpetual claims by noting that the injury would terminate with this second generation child. Michigan likewise recognized such a claim in *Monusko v. Postle, et al.*, 175 Mich. App. 269, 437 N.W.2d 367 (Mich. App. 1989).

The record of DES pre-conception tort cases is sparse. *Sorrells v. Eli Lilly & Co.*, 737 F. Supp. 678 (D.D.C. 1990), interpreted Maryland law to disallow such a claim. Minnesota, in *Loarch v. Abbott Laboratories*, No. 79-8720, slip op. (Hennepin County, Minn. Dist. Ct., Apr. 20, 1988), affirmed by a divided Supreme Court in *Loerch v. Eli Lilly & Co.*, 445 N.W.2d 560 (Minn. 1989), cited "traditional tort law" as its reason to disallow a third generation tort. As previously noted, New York decided to the contrary in its *Enright* decision. The New York legislature had previously addressed DES cases by passing a revival statute in their regard, indicating a special regard for their particular nature.

### C. DES - A Unique Case

It is the unique nature of the typical DES case that convinces this Court that Nicholas Murchison's claim must go forward. DES

claims are simply different from other tort claims, even other preconception tort claims, in that the damage allegedly caused by DES does not manifest itself until the fetus exposed to the drug becomes a mother. Unlike cases like *Albala* and *Bergstreser*, where a woman's uterus suffered physical damage of which she was immediately aware and for which she might, as in *Albala*, immediately seek damages, women whose uteruses have been deformed by DES often do not know they are injured and cannot assess the potential impact of their injury until they give birth to an injured child. Only then does the injury become overt. To disallow the party who bears the overt injury an action against his wrongdoer would give him no recourse to recover for his harm.

Nicholas must still prove proximate cause. He must prove not only that his mother was injured by the DES consumed by her mother, but that this injury caused injury to him. Surely this will provide adequate boundaries for circumscribing the legal responsibilities of the DES manufacturer. Nicholas must still surmount any barriers of foreseeability which his proof entails. While no one argues that the eventual birth of a child to a DES-exposed female fetus is not a foreseeable event, just what may have been reasonably foreseeable to drug companies in the 1950s may be another matter. As previously stated, that issue is for a jury.

Finally, it is not the case that the injury involved in DES cases like the one before the Court will involve future generations. Unless DES also causes genetic damage, of which there is no evidence before us, these DES injuries are third generation

8

injuries only and will not extend into future generations, further impacting the Courts.

### D. Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74 (5th Cir. 1990); 5A Wright & Miller, *Federal Practice & Procedure*, § 1367 at 509-10 (1990). It "only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain." Wright at 510. The case before does not fit into these strictures.

For all the foregoing reasons, it is RECOMMENDED that Eli Lilly & Company's Motion for Judgment on the Pleadings be DENIED.

The Clerk shall file this instrument and mail a copy to all parties. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985). The original of any written objections shall be filed with the U.S. District Clerk, P.O. Box 61010, Houston, Texas 77208 and a copy shall be delivered

to the Chambers of Judge Rainey, Room 8613 and to the Chambers of Judge Stacy, Room 7525.

The Clerk of the Court shall provide a true copy of this Order to all counsel of record.

Signed at Houston, Texas on this the 30th day of October, 1990.

*Frances H. Stacy*
FRANCES H. STACY
UNITED STATES MAGISTRATE