# ORIGINAL

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

------------------------------x
SUSAN SORRELLS & SHANNA SORRELLS :
          Plaintiffs            :
       v.                       :   Civil No. 60386
ELI LILLY AND COMPANY           :
          Defendant             :
------------------------------x

HEARING

Rockville, Maryland                    November 14, 1991

CompuScribe
(301) 577-5882

1  you affect uteruses, you affect the ability to make
2  children.
3      This uterus was shared by Shanna.  That is to say
4  Shanna has cause of action not remotely --
5      THE COURT:  She grew up there -- at least a
6  portion of her grew up there.
7      MR. LEVINE:  That was her organ when she was in
8  there.  You cannot be born without somebody else's uterus.
9  Now, the DES that Lilly made affected Shanna's organ,
10 Shanna's oven, Shanna's factory; and, therefore, it is not
11 without contact.
12     It is not remote, and it is -- we are not claiming
13 a genetic injury which goes for centuries and centuries.  We
14 are just claiming this one person who was injured as a
15 result of an organ that she shared directly by their drug
16 which was untested and never worked.
17     And, so we claim the child has a complete,
18 independent, viable cause of action for all of its injuries,
19 but we are only taking -- asking for half the apple.  Very
20 frankly, Your Honor, it is because when I stood up in front
21 of the Supreme Court in Minnesota, two justices said, Do you
22 mean to say that if I hit a woman and injure her uterus, I
23 am going to be responsible for 100 years?  And that put the
24 fear of God in me.
25     That is why I am saying if we are going to make a

1  policy decision here, I would just as soon. --

2          THE COURT: I consider the Supreme Court of

3  Minnesota to be one of the far more enlightened appellant

4  courts in the United States of America.

5          MR. LEVINE: And they came down four, four on this

6  issue.

7          THE COURT: Well, I say that because of one of my

8  own issues some years ago that they came down in the right

9  direction, whereas the seventh and the eighth circuits

10 failed to understand the mystery of what I was up to; so, I

11 guess it is a personal thing. All right.

12         MR. LEVINE: Well, I am saying that Maryland

13 approves preconception tort in Jones versus Malinowski, and

14 this is not so remote as to be a pos gras situation.

15         THE COURT: All right. Ms. Smith, do you hear

16 him? I mean, had you seen this chart before?

17         MS. SMITH: No.

18         THE COURT: Well, he might give you a copy of it

19 if you ask him nice.

20         MS. SMITH: With all due respect, I could probably

21 draw it a little bit better.

22         THE COURT: Yes, maybe you could.

23         MS. SMITH: It is a very interesting chart, and

24 the whole theory is very interesting, but Shanna Sorrells,

25 the minor, was not in any way in her mother's uterus when

1  her mother was in utero. That chain, as Mr. Levine even
2  admitted, was a little fanciful. I think it is.
3          I mean, we have to go back to the allegations of
4  the complaint because we are not going to decide today what
5  in fact happened, and what plaintiff alleges is that the
6  grandmother's ingestion of DES did indeed cause
7  Susan Sorrells to have certain anatomical abnormalities of
8  the uterus and cervix, which they then claimed led to the
9  premature birth of Shanna -- not that Shanna also had a
10 deformed uterus as Mr. Levine seemed to imply, but that she
11 was born prematurely because her mother was injured.
12          THE COURT: But she has got a lot of problems.
13          MS. SMITH: Yes, but unrelated to any reproductive
14 problems as far --
15          MR. LEVINE: They are related to the prematurity.
16 They are not related to a genetic or reproductive --
17          THE COURT: Well, but, I mean, in arguendo one
18 might say that but for the prematurity, which you argue was
19 caused by the ingestion of the DES, she wouldn't have been
20 in the fix she is in. So, I mean, there is at least an
21 argument there.
22          MS. SMITH: Right. That is the connection.
23          THE COURT: I don't know if you are willing to
24 concede that. I don't think he is conceding that now.
25 Well, all right. I am ready to rule on it. I am not at all

quite sure, and maybe some day when all is said and done one of the other of you can come back to me and tell me what Mr. Levine had up his sleeve by abandoning the various claims involving the pain and suffering and so forth because right now I don't quite understand that.

But as to the question of whether or not there is a viable cause of action on behalf of Shanna that would have to do with the various medical expenses that she will have to -- that will have to be incurred on her behalf, I rule specifically that that is a good argument; that she does have such a cause of action; and that, therefore, the defendant's motion to dismiss the complaint is denied.

On the other hand, however, it seems to me that if the defendant is still persisting in its motion for a more definite statement -- and are you? I mean, do you understand this now or do you want him -- I will make him write it out, if you want him to write it out.

MS. SMITH: Well, Your Honor, I must say that I share the same confusion you just expressed yourself as to exactly what is going on.

THE COURT: No, I don't -- no, no, no, no, no. Don't put words into my mouth.

MS. SMITH: I do want him to write it out.

THE COURT: I understand exactly what is going on. I had confusion when I started out, but now that I have

C E R T I F I C A T E

CompuScribe hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 60386

SUSAN SORRELLS & SHANNA SORRELLS

Plaintiff

vs.

ELI LILLY AND COMPANY

Defendant

By:

*Abby Vaught-Spencer* (signature)

Abby Vaught-Spencer

Transcriber