UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA MANNING, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ELI LILLY AND COMPANY,<br><br>　　　　　Defendant. | CIVIL ACTION No. 04-11164 (RCL/MBB) |

**ELI LILLY AND COMPANY'S MOTION TO STRIKE
STATEMENT OF PHILIP CAFFERTY**

Defendant Eli Lilly and Company ("Lilly") hereby moves this Court to strike the statement of Mr. Philip Cafferty ("Mr. Cafferty"). Any testimony from Mr. Cafferty is unreliable and adds no value to this case.

Plaintiff Brenda Manning ("Ms. Manning") alleges injuries caused by *in utero* exposure to a DES product taken by her mother Janet Berg ("Ms. Berg") in 1963. Minor Plaintiff Brian Manning ("Brian") alleges injuries caused by his premature birth, which was allegedly caused by Ms. Manning's *in utero* exposure to DES. Ms. Berg testified at deposition that she filled her DES prescription at the Boston Lying-In Pharmacy in Boston, Massachusetts. In order to prove that the Boston Lying-In Pharmacy dispensed a Lilly product to Ms. Berg, Plaintiffs have introduced a statement from Mr. Cafferty on the Massachusetts DES market during the 1960's.

Mr. Cafferty is now deceased and unavailable to testify. When he was alive, Mr. Cafferty was not an expert on the stocking and dispensing practices of Massachusetts pharmacies. Rather, he was a retired pharmacist who worked as an investigator for Plaintiffs' attorney, Aaron Levine. In 2003, Mr. Cafferty conducted a very limited and unscientific "survey" of pharmacists in the Boston area, reviewed approximately 125 pharmacist statements

B3058265.3

compiled by Plaintiffs' attorneys, and drew on his personal experience as a pharmacist to draft his Statement. As Lilly will demonstrate below, none of these sources were sufficiently reliable to allow Mr. Cafferty to form an expert opinion on the DES market in Massachusetts that would pass the *Daubert* test. Therefore, Lilly respectfully requests that this Court strike Mr. Cafferty's Statement from the record..

### A.    The *Daubert* Standard.

"Federal Rule of Evidence 702 'assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). The Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court established the gate-keeping role of trial judges in evaluating the admissibility of scientific evidence pursuant to Federal Rule of Evidence 702. *Daubert,* 509 U.S. 579, 592-5 (1993). The court set forth guidelines for federal judges in their evaluation of expert testimony under a two-pronged test to determine (1) whether the theory or methodology underlying the testimony is reliable and (2) whether the expert's theory or methodology will assist the fact-finder. *See id.*

Rule 702 and *Daubert* aid judges to ensure that proffered expert testimony "is the product of reliable principles and methods." Fed. R. Evid. 702. "[T]he trial court must decide whether the proposed testimony, including the *methodology* employed by the witness in arriving at the proffered opinion, 'rests on a *reliable foundation* and is *relevant* to the facts of the case.'" *Ed*

*Peters Jewelry Co. v. C. & J. Jewelry Co.*, 124 F.3d 252, 259-60 (1st Cir. 1997) (citing *Daubert*, 509 U.S. at 597) (expert testimony that was "internally inconsistent and unreliable" excluded) (emphasis in the original).

The focus of the analysis under *Daubert* is on the principles and methodology used by the expert, not the actual conclusions reached by the expert. *See Daubert,* 509 U.S. at 595. The reliability requirement ensures that an expert's analysis is based on the scientific method and supported by appropriate validation. *See id.* at 590. Requiring that testimony be relevant to the facts of the case ensures that such testimony will assist the fact-finder to understand the evidence or to determine a fact in issue, instead of prejudicing the other party or confusing the court. *See Kumho Tire Co. v. Carmicheal*, 526 U.S. 137, 152 (1999); *Daubert*, 509 U.S. at 590-2, 595. Federal District Courts serve as the gatekeepers to ensure that any expert testimony advances the issues in dispute at trial. *See Daubert,* 509 U.S. at 597. The trial court's role as gatekeeper prevents "….the introduction of evidence that is not relevant or is not reliable." *U.S. v. Patrick,* 6 F.Supp. 2d 51, 55 (D. Mass. 1998).

Courts typically consider several factors when assessing the reliability of proffered expert testimony. These factors, derived from *Daubert*, include:

> (1) whether the opinion can be or has been tested; (2) whether the theory or technique on which the opinion is based has been subjected to peer review and publication; (3) the technique's known or potential error rate; (4) the existence and maintenance of standards controlling the technique's operations; and (5) "general acceptance."

*Sutera v. Perrier Group of America, Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997); *see also United States v. Sampson*, 335 F. Supp. 2d 166, 218-219 (D. Mass. 2004) (identifying the five *Daubert* factors). *Daubert* requires that the expert testimony offered be based on a technique that can be or has been tested by the community of which the expert is or purports to be a

member. In Mr. Cafferty's case, his survey and other market research "investigations" have not been subjected to any such evaluation. As a result, Mr. Cafferty's testimony would contravene this central requirement of *Daubert* because upon even a brief review it becomes clear that Mr. Cafferty's survey is not based on *any* theory or test. *See* 509 U.S. at 593.[1] Viewing Mr. Cafferty's lack of credentials and "survey" through this framework demonstrates the unreliability and, therefore, inadmissibility of his proffered testimony.

### B. Mr. Cafferty's "Survey" Does Not Qualify Him as an Expert on the Massachusetts DES Market Under *Daubert*

Mr. Cafferty was a pharmacist, not a market researcher nor statistician. Transcript of Deposition of Philip Cafferty ("Cafferty Tr.") in *Dean v. Eli Lilly and Company*, Civ. Action No. 02-CV-11078 (RGS), at 15-16, 30, 41-42 (excerpts attached as Exhibit 1 to Affidavit of Brian L. Henninger in Support of Defendant's Motion to Strike Statement of Philip Cafferty ("Henninger Aff.")). He holds no degree in survey research, has completed no courses in survey techniques, and has never conducted a survey outside of the context of his work for Plaintiffs' counsel; he has no experience in the very field in which he is being offered as an expert. *Id.*

Mr. Cafferty's lack of expertise produced a "survey" that is wholly unreliable under *Daubert*. In total, Mr. Cafferty interviewed approximately 200 pharmacists from the 2003 Boston, South Shore, Natick, and Framingham Yellow Pages. *Id.* at 9. Of those 200 pharmacists, only 16 or 17 actually practiced pharmacy in the 1960's. *Id.* at 12. Mr. Cafferty admitted that his survey sample was miniscule in light of the fact that there were at least 2,500-3,700 pharmacists practicing in Massachusetts during the 1960's. *Id.* at 76. There was no methodology for Mr. Cafferty's survey, aside from asking any pharmacist he spoke with who

---

[1] Mr. Cafferty's opinion regarding Lilly's DES market share also fails to satisfy *Daubert's* requirement that an expert's study be subject to peer review and publication. *See Daubert*, 509 U.S. at 593-95.

B3058265.3                                  - 4 -

happened to practice in the 1960's whether they recalled the brand of DES they dispensed. *Id.* at 9-10.  Additionally, Mr. Cafferty acknowledged that he did not methodically document his survey results. *Id.* at 20-22, 84.  Mr. Cafferty never consulted any expert to ensure that his survey was statistically significant or representative of the Massachusetts market, in fact, he could not even define those terms. *Id.* at 29-32.  Moreover, Mr. Cafferty never took any steps to verify that he was obtaining accurate results from the pharmacists with which he spoke. *Id.* at 38-39.  Taken together, these facts demonstrate that Mr. Cafferty's "survey" did not make him an expert on the Massachusetts DES market in the 1960's.

> **C.   Mr. Cafferty's Review of Pharmacists Statements Compiled By Plaintiffs' Attorneys Does Not Qualify Him as an Expert on the Massachusetts DES Market Under *Daubert***

In addition to conducting his survey, Mr. Cafferty reviewed a set of approximately 125 statements from pharmacists compiled by Plaintiffs' attorneys. *Id.* at 105.  These statements were obtained in suits brought against Lilly; their selection was hardly random or representative, and Mr. Cafferty's review of them has none of the hallmarks of a scientific survey.  Mr. Cafferty took no steps to verify the accuracy of those statements, but merely relied on the "good judgment" of Plaintiffs' counsel. *Id.*  Moreover, Mr. Cafferty took no steps to test the memories of the pharmacists whose statements he reviewed. *Id.* at 105-06.  Without more, Mr. Cafferty's familiarity with the pharmacist statements of Plaintiffs' counsel does not make him a reliable expert on the Massachusetts DES market under *Daubert*.

> **D.   Mr. Cafferty's Experience as a Pharmacist Does Not Qualify Him as an Expert on the Massachusetts DES Market Under *Daubert***

Mr. Cafferty's limited experience as a pharmacist and Lilly employee is not relevant to this case.  Ms. Berg allegedly filled her DES prescription from the Boston Lying-In Pharmacy while living in Massachusetts in 1963.  From 1961 until 1965, Mr. Cafferty worked as a licensed

pharmacist in two pharmacies in Rhode Island. Cafferty Tr. at 52-54. He did not work in Massachusetts as a licensed pharmacist until 1984 at the earliest. *Id.* at 54. From 1965 until DES went off the market in 1971, Mr. Cafferty worked for Eli Lilly and Company in various capacities. During his employment with Lilly, Mr. Cafferty never detailed DES, and never had reason to pay attention to the DES market. *Id.* at 65, 77. Mr. Cafferty's experience as a licensed pharmacist and Lilly employee was obtained at the wrong places, at the wrong times, and with respect to the wrong drugs to provide him with any expertise on the Massachusetts DES market during the 1960's.

## **CONCLUSION**

For the foregoing reasons, Lilly respectfully requests that the Court strike Mr. Cafferty's Statement from the record. Lilly submits that Mr. Cafferty's Statement is unreliable and will not assist the Court in understanding the evidence, thus warranting its exclusion pursuant to Federal Rule of Evidence 702 and *Daubert*.

**REQUEST FOR HEARING**

Pursuant to LR 7.1(D), Lilly requests a hearing on its Motion to Strike the Statement of Philip Cafferty.

Respectfully submitted,

ELI LILLY AND COMPANY
by its attorneys

/s/ Brian L. Henninger
James J. Dillon (BBO# 124660)
Brian L. Henninger (BBO# 657926)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Dated: July 26, 2005

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

I hereby certify that I contacted counsel for Plaintiffs on July 6, 2005 to confer about the above Motion to Strike the Statement of Philip Cafferty. Plaintiffs' counsel indicated that Plaintiffs would oppose Lilly's Motion.

/s/ Brian L Henninger
