**APPENDIX A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA MANNING, et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>ELI LILLY AND COMPANY,<br><br>              Defendant. | CIVIL ACTION No. 04-11164 (RCL/MBB) |

**DEFENDANT ELI LILLY AND COMPANY'S**
**REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

Defendant Eli Lilly and Company ("Lilly") submits this Reply Brief in Support of Summary Judgment to correct mischaracterizations of the applicable law and facts contained in Plaintiffs' Opposition to Defendant Eli Lilly's Motion for Summary Judgment ("Plaintiffs' Opposition"). Specifically, Plaintiffs improperly attempt to shift their product identification burden to Lilly and incorrectly assert that Massachusetts based Marsh Parker was not listed as a DES manufacturer in the Red or Blue Books prior to 1964. Further, Plaintiffs have submitted several new statements in an attempt to meet their product identification burden. These untimely statements are incompetent under the Federal Rules of Evidence, and substantively bring Plaintiffs no closer to meeting their product identification burden.

In addition, Lilly argued in its Memorandum of Points and Authorities in Support of Summary Judgment ("Lilly's Memorandum") that no appellate court had allowed third-generation DES claims to proceed. In response, Plaintiffs misconstrue two decisions from the Second and Seventh U.S. Circuit Courts of Appeal as holding that third-generation DES claims are cognizable. A closer look at these two cases demonstrates that neither affirmed the viability of third-generation DES claims. Perhaps more importantly, Plaintiffs fail to cite one

*Massachusetts* case in their Opposition supporting the claim that third-generation torts are cognizable in the Commonwealth. Plaintiffs have simply failed to make the necessary showing to avoid summary judgment.

### A.   Product Identification is Plaintiffs' Burden -- Lilly Does Not Have to Identify an "Alibi" Manufacturer to Win Summary Judgment

Plaintiffs' argue that Lilly's summary judgment motion must fail with respect to product identification because it "cannot come up with another 25 mg DES pill that meets the [pill] description by the mother." Plaintiffs' Opposition, at 16. This is an inaccurate statement of the applicable law and the facts of this case.

Perhaps Plaintiffs misconstrue the applicable law in this case because they rely on everything but Massachusetts authority for their arguments. Plaintiffs' description of Lilly's "summary judgment threshold" is derived from Iowa, Illinois, Ohio, and Michigan case law. *See id.* at 10-12. As Lilly has already argued, *Massachusetts law* puts the burden on Plaintiffs to submit evidence showing that it is "more probable than not" that their injuries were caused by Lilly's product. *Spencer v. Baxter Int'l., Inc.*, 163 F.Supp.2d. 74, 78 (D. Mass. 2001). Rather than submitting evidence that would meet this burden, Plaintiffs' dedicate the majority of their Opposition to arguing that Lilly has not identified another manufacturer whose product might have caused their injuries. Setting aside the fact that Lilly has identified such manufacturers (see below), Massachusetts law does not require defendants to identify alibi manufacturers to win summary judgment. *See Spencer*, 163 F.Supp.2d at 78 (granting summary judgment to defendants where plaintiffs could not identify which one of two available blood products caused their injuries). In this case, where the only competent evidence of product identification is a pill description, it is *Plaintiffs'* burden to prove that Lilly manufactured the only pill meeting that description. Plaintiff has not and cannot come close to meeting this burden.

The evidence on the record, and indeed Plaintiffs' own evidence, supports the conclusion that Lilly was *not* the only DES manufacturer with a round, white, cross-scored pill on the market in 1963. First, Plaintiffs argue that Massachusetts based Marsh-Parker did not appear in the Blue Book or the Red Book before 1964. Plaintiffs' Opposition, at 8, 15. This is simply not true. Marsh-Parker appears as a manufacturer of Diethylstilbestrol in the 1958-1959, 1960-1961, and 1961-1962 Blue Books, a nationally circulated catalogue of drugs sent to pharmacists. *See* 1958-1962 *American Druggist Blue Books*, excerpts attached as Exhibit 1(A)-(C) to the Supplemental Affidavit of Brian L. Henninger ("Supp. Aff."). Second, Plaintiffs argue that Squibb's Stilbetin cannot serve as an alibi for Lilly because Stilbetin had writing on one side and Ms. Berg recalled that the pill she took had no writing. Plaintiffs' Opposition, at 16. The problem with this argument is that Plaintiffs do not date their description of the Squibb pill. The appearance of pharmaceutical drugs can change, and Plaintiff has provided no evidence that Squibb's Stilbetin had an imprint on it *in 1963*.

More fundamentally, Plaintiffs fail to comprehend the import of the existence of the Marsh-Parker and Squibb DES pills. Lilly points to those manufacturers not as *the* manufacturers who made *the* DES Ms. Berg allegedly ingested, but rather as examples of the fact that many manufacturers may have made white, cross-scored pills in 1963. There were at least 102 manufacturers in the DES market that year. Neither Lilly nor Plaintiffs know what all those DES pills looked like. What the parties do know is that more than one DES manufacturer made a white, cross-scored DES pill. This undisputed fact makes it more likely than not that *other* DES manufacturers made pills fitting this description. A cross-score is a practical rather than ornamental characteristic; all manufacturers had the ability to cross-score their pills to make them easier to cut into smaller dosages. The cross-score is not a trademark or logo with some

indicia of exclusivity. Recently, the District Court for the District of Columbia held that where a DES plaintiff's common pill description could not exclude Marsh Parker, Squibb and other DES manufacturers as potential tortfeasors, summary judgment was appropriate. *See Galvin v. Eli Lilly and Company*, Civ. Action No. 03-CV-01797 (CKK) (D.D.C. June 10, 2005) (attached hereto as Exhibit 2 to Supp. Aff.).

### B. Mr. Principe's Contradictory Supplemental Affidavit Adds Nothing to Plaintiffs Evidence on Product Identification

Plaintiffs cannot attribute knowledge to Mr. Principe that he admittedly does not possess. Having failed to show that Ms. Berg's pill description identifies Lilly, Plaintiffs offer Mr. Principe in an attempt to prove that the dispensing pharmacy in this case only carried Lilly's DES. Even crediting his supplemental affidavit, Mr. Principe can offer no such proof.

At his deposition, Mr. Principe clearly stated that he did not step foot inside the Boston Lying-In Pharmacy until 1967,[1] more than three years after Ms. Berg allegedly filled her DES prescription there. Transcript of Deposition of William R. Principe ("Principe Tr.") at 98 (Supp. Aff., Ex. 3). Mr. Principe further testified that he could not be sure that Lilly's DES was dispensed by the Boston Lying-In Pharmacy in 1963. *See id.* at 121. Nothing in Mr. Principe's supplemental statement contradicts this testimony. The most telling thing about Mr. Principe's supplemental statement is what it does *not* say -- nowhere does Mr. Principe claim to have personal knowledge of the stocking and dispensing practices of the Boston Lying-In Pharmacy in

---

[1] In his supplemental statement, Mr. Principe states that he was a pharmacist in the Boston Lying-In Pharmacy located in Boston from 1966-1974. This statement contradicts Mr. Principe's deposition testimony and should be stricken. *See* Principe Tr. at 98 (testifying that he did not visit the Boston Lying-In Pharmacy until 1967); *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) (stating that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed").

1963, the only time period relevant to this case. Without such knowledge, Mr. Principe cannot help Plaintiffs meet their product identification burden.

Further, Mr. Principe's supplemental statements regarding the purchasing, ordering, stocking, and dispensing of DES in the Boston area between 1963 and 1966 should not be considered on summary judgment. Mr. Principe testified at his deposition that his knowledge about the purchasing, ordering, stocking, and dispensing of DES was strictly limited to those pharmacies where he worked full-time. Principe Tr. at 77-78 (Supp. Aff., Ex. 3). He candidly admitted that he could not speak to the practices of any other pharmacies during the 1960's. *Id.* at 78. Given this testimony, Mr. Principe cannot testify to the ordering, purchasing, stocking, and dispensing of DES in the Boston area *generally* between 1963 and 1966, nor can he testify to the customs and ordinary practices of retail pharmacies in the Boston area *generally* during this time period. These are subjects for expert testimony, and Mr. Principe has admitted that he is not an expert in the field.

### C. The Sparr and Cafferty Statements Must be Excluded

The Sparr and Cafferty statements must be excluded because these witnesses cannot offer competent fact or expert testimony. Lilly has submitted Motions to Strike the Sparr and Cafferty statements,[2] the grounds for which are set out briefly below.

#### 1. The Sparr Statement

Mr. Sparr is not an expert on the stocking and dispensing practices of Massachusetts pharmacies. *See* Transcript of Deposition of Harold Sparr in *Bohlin v. Eli Lilly and Company*, 03-CV-11577 (MEL) ("Sparr Tr.") at 5-7, 116-19 (attached as Exhibit 4 to Supp. Aff.). Mr. Sparr is a retired pharmacist who works as an investigator for Plaintiffs' attorney, Aaron Levine.

---

[2] *See* Docket Entry Nos. 31 and 32.

B3057746.7 - 6 -

In that role, Mr. Sparr sought out pharmacists in cases Mr. Levine filed against Lilly, interviewed them with no set list of questions and no organized notes, and solicited their help by a letter referencing a suit involving the "Liability Insurance Company who insured Eli Lilly & Co." Mr. Sparr then supplied those pharmacists who agreed to identify Lilly with a printed affidavit form to complete. *See* Sparr Tr. at 96 (Supp. Aff., Ex. 4). This work on litigation has none of the hallmarks of scientific surveying that would support an expert opinion.

Further, Mr. Sparr has no background or experience in scientific surveys. The "survey" Mr. Sparr participated in was designed by Mr. Levine. *Id.* at 159-63. This "survey," addressed more fully in Lilly's Motion to Strike, is flawed in many ways, not least by a selection process of happenstance, coincidence and convenience, not science. The resulting sampling of approximately 1.5% of the pharmacists that Mr. Sparr testified were practicing in Massachusetts during the years supposedly surveyed is clearly insufficient to aid a trier of fact in determining the issues presented in this case. Mr. Sparr has no training in survey or market study techniques, has never completed any coursework in these areas, and completed his work for this litigation with constant oversight, direction and guidance from Plaintiffs' attorney. *Id.* at 126-28. His expert testimony will not aid the trier of fact's determination of the issues in this case, and would only serve to confuse a jury. Further, Mr. Sparr's "survey" dealt only with pharmacists who were first licensed in Massachusetts between 1963 and 1967 and were still licensed in 2004, *id.* at 141-44; longevity to 2004 is not a reasoned basis for selecting pharmacists with knowledge of DES marketing.

In addition to other flaws in this sampling, the survey could not give any information about practices of the pharmacists before 1963. Only 76 our of the 376 pharmacists listed as "surveyed" were licensed at any time in 1963, and there is no way to tell from Mr. Sparr's report

if <u>any</u> of those 76 returned the survey at all, much less reported that Lilly was the "primary" DES dispensed when a prescription did not call for any particular brand. *See* List of Pharmacists Surveyed by Harold Sparr, dated April 23, 2004 (attached as Exhibit 5 to Supp. Aff.); Statement of Harold Sparr, Attachment 1 -- "Stilbestrol Survey for Pharmacists" (attached as Exhibit 6 to Supp. Aff.). The tiny sample of 1963 pharmacists surveyed and the lack of data on their responses both combine to make the Sparr statement incompetent to tell anything about 1963.

Finally, Mr. Sparr never worked at the Boston Lying-In Pharmacy in Boston and has no personal knowledge of the stocking and dispensing practices of that store. For all these reasons, Mr. Sparr's "expert report" should be stricken from the record.

### 2. The Cafferty Statement

The Cafferty Statement is similarly unreliable under *Daubert*. Mr. Cafferty is now deceased. In life, he was a retired pharmacist who answered an ad placed by Plaintiff's counsel in the Boston Globe for an elderly pharmaceutical sales representative willing to do research on diethylstilbestrol. Transcript of Deposition of Phillip Cafferty ("Cafferty Tr.") at 6 (attached as Exhibit 7 to Supp. Aff.). Mr. Cafferty had no training in market research or statistics. Cafferty Tr. at 15-16, 30, 41-42 (Supp. Aff., Ex. 7). Mr. Cafferty based his statement on three sources of data about the Massachusetts DES market in the 1960's: (1) a limited and unscientific phone "survey" of pharmacists, (2) a review of approximately 125 pharmacist statements provided by Plaintiffs' attorney, and (3) his own personal experience as a pharmacist and former employee of Lilly. *Id.* at 9, 52-54, 65, 77, 105. All three of these sources of information are insufficient to qualify Mr. Cafferty as an expert in the Massachusetts DES market.

First, Mr. Cafferty's survey had no methodology and was extremely limited in scope. In all, Mr. Cafferty only spoke with 16 or 17 pharmacists out of the thousands who practiced in Massachusetts during the 1960's. *Id.* at 12. No steps were taken to ensure that Mr. Cafferty's

sampling was representative, or that his results were statistically significant, in fact, Mr. Cafferty did not even know what those terms meant. *Id.* at 29-32. Moreover, no steps were taken to verify the accuracy of the memories of the pharmacists with which Mr. Cafferty spoke. *Id.* at 38-39.

Second, Mr. Cafferty's review of pharmacist statements provided by Plaintiffs' attorney was similarly unreliable. The statements obtained by Mr. Levine in cases brought against Lilly have no indicia of a random survey - they were not even designed as a survey. *Id.* at 105-06. Mr. Cafferty took no steps to verify that the statements accurately reflected the recollections of the pharmacists, nor did he take any steps to verify the accuracy of the pharmacists recollections themselves. *Id.*

Third, Mr. Cafferty's personal experience as a pharmacist and former Lilly employee are irrelevant to this case. Mr. Cafferty worked as a licensed pharmacist in two Rhode Island drug stores from 1961 to 1965, *id.* at 52-54; Ms. Berg allegedly filled her DES prescription at the Boston Lying-In Pharmacy in 1963. From 1965 to 1972, Mr. Cafferty worked for Lilly in various positions having nothing to do with DES. He never detailed DES, and had no reason to follow the DES market. *Id.* at 65-77.

Taken together, these facts indicate that Mr. Cafferty's Statement is unreliable and that his personal experience as a pharmacist and Lilly employee is irrelevant to this case. For all these reasons, Mr. Cafferty's Statement should be stricken from the record.

### D. Plaintiff Identifies No Binding or Persuasive Authority Suggesting That Third-Generation DES Tort Suits Are Cognizable in Massachusetts

In their zeal to challenge the fact that no appellate court in the country has allowed a third-generation DES case to proceed, Plaintiffs apparently have lost sight of the applicable law *in this case*. "It is axiomatic that state substantive law must be applied by a federal court sitting

in diversity jurisdiction." *See Reicher v. Berkshire Life Ins. Co. of America*, 360 F.3d 1, 4 (1st Cir. 2004) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Ignoring this fundamental precept, Plaintiffs state that "recovery for preconception torts is established law in Massachusetts" without citing a single *Massachusetts* case supporting that proposition. *See* Plaintiffs Opposition, at 21-22. Further, Plaintiffs chide Lilly for citing Massachusetts loss of consortium cases to support its argument that the Commonwealth is unlikely to allow third-generation tort suits. *See id.* at 19. Lilly simply cited the preconception tort cases that have been decided by courts applying Massachusetts law. Those cases indicate that such claims are not favored in the Commonwealth. *See McNulty v. McDowell*, 613 N.E.2d 904 (Mass. 1993) (declining to recognize a cause of action by an injured child based on failure to administer a rubella test to the plaintiff's mother before plaintiff was conceived); *Angelini v. OMD Corp.*, 575 N.E.2d 41, 43 (Mass. 1991) (rejecting loss of consortium claims for children conceived after parent was injured); *see also Lareau v. Page*, 840 F. Supp. 920, 930 (D. Mass. 1993) (*aff'd by Lareau v. Page*, 39 F.3d 384 (1st Cir. 1994) (rejecting a loss of consortium claim by a daughter who was conceived after her mother was injured).

In addition, Plaintiffs grossly mischaracterize federal case law from other jurisdictions in an attempt to escape the fact that third-generation DES claims have been universally rejected in appellate courts. First, Plaintiffs state that the U.S. Court of Appeals for the Second Circuit reversed *Enright v. Eli Lilly & Co.*, which imposes a categorical bar on third-generation DES claims in New York. 570 N.E.2d 198 (N.Y. 1991) This is simply not true. The case cited by Plaintiffs for this proposition, *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, involved a dispute between a DES manufacturer and its insurance company over the scope of insurance coverage. 241 F.3d. 154 (2d. Cir. 2001). The Second Circuit held that settlements of third-generation DES

claims fell within the scope of coverage under the terms of the relevant insurance agreements. The Court noted in dicta that New York and Ohio had imposed categorical bars on third-generation DES claims, but explicitly disclaimed any position on the viability of such claims, stating:

> The issue in this case, however, is simply whether the settlement payments to third-generation claimants are covered under the indemnification agreement; that is, whether the policy may be read to extend coverage to third-generation injuries and whether the settlement payments were made "by reason of liability."

*Id.* at 171, n.6. *E.R. Squibb* did not even pass on the third-generation issue, much less affirm the viability of such claims.

Plaintiff similarly overestimates the import of *McMahon v. Eli Lilly and Company*, 774 F.2d 830 (7th Cir. 1985). There, the U.S. Court of Appeals for the Seventh Circuit reversed a district court's grant of a directed verdict for Lilly on the grounds (1) that a second-generation plaintiff failed to make a prima facie showing that Lilly manufactured the DES her mother took, and (2) that Lilly had no duty to the plaintiffs because any injuries to the *second* generation were unforeseeable in 1955 when the second-generation plaintiff's mother took DES. *Id.* at 832. The Seventh Circuit reversed and remanded, holding that both issues were for the jury. While a third-generation claimant appears in the caption, the court never explicitly considered the viability of a third-generation claim. The Court's holding with respect to foreseeability in 1955 was specifically restricted to the foreseeability of harm to the *second* generation. Eight years later, the Illinois Supreme Court expressly considered and rejected a third-generation DES claim. *Sparapany v. Rexall Corp.*, 618 N.E.2d 1098, 1101 (Ill. Ct. App. 1993).

The remainder of the authority cited by Plaintiffs for the proposition that third-generation DES claims are viable in Massachusetts come from lower courts in a variety of jurisdictions other than the Commonwealth. *See* Plaintiffs' Opposition, at 25. None of those decisions were

affirmed by an appellate court. None of those decisions were issued by a court applying Massachusetts law. As such, those decisions are neither binding nor persuasive on the viability of third-generation DES claims under Massachusetts law.

## CONCLUSION

For the foregoing reasons, and for the reasons discussed in Lilly's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment, Lilly respectfully requests that its Motion for Summary Judgment be granted.

## REQUEST FOR HEARING

Pursuant to LR 7.1(D), Lilly requests a hearing on its Motion for Summary Judgment.

                Respectfully submitted,

                ELI LILLY AND COMPANY
                by its attorneys

                /s/ Brian L. Henninger
                James J. Dillon (BBO# 124660)
                Brian L. Henninger (BBO# 657926)
                Foley Hoag LLP
                155 Seaport Boulevard
                Boston, MA 02210-2600
                (617) 832-1000

Dated: July 26, 2005